DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| SHIROKIA MEZZ I, LLC, | Case No. 16-43666 (NHL) |
|  |  |
| Debtor. |  |

-------------------------------------------------------------X

## OPPOSITION OF THE DEBTOR TO MOTION OF 38th AVENUE MEZZ LLC FOR AN ORDER (A) DISMISSING DEBTOR'S CHAPTER 11 PETITION PURSUANT TO 11 U.S.C. § 1112(b); OR (B) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)

Shirokia Mezz I LLC (the "Debtor"), debtor and debtor in possession in the above-captioned proceeding, in opposition to the motion ("Motion") of 38th Avenue Mezz LLC ("38th Avenue"), for the entry of an order (A) dismissing Debtor's Chapter 11 petition pursuant to 11 U.S.C. § 1112(b); or (B) granting relief from the automatic stay pursuant to 11 U.S.C. §362(d), respectfully represent as follows:

1.    On August 16, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.    The Chapter 11 filing was caused by 38th Avenue's surprising response to a request for a pay-off letter.  Instead of providing the correct information, the pay-off letter lumped together the Debtor's obligation to 38th Avenue under a mezzanine loan, and Shirokia Development's obligations to W Financial under a mortgage loan.  One day later,

38th Avenue sought to schedule an auction of the Debtor's membership interests in Shirokia Development.

3.    The Chapter 11 case was filed to protect the Debtor's valuable membership interests in Shirokia Development while enforcing its right to satisfy its obligations to 38th Avenue by paying a $2,000,000 Note.

4.    The Debtor anticipates it will have all or substantially all of the funds necessary to satisfy the $2,000,000 Note deposited into an attorney escrow account prior to the hearing on this Motion.  In the event 38th Avenue continues to refuse to accept the funds, or to provide a legitimate pay-off, the Debtor intends to file a motion seeking an order directing 38th Avenue to accept the funds in full satisfaction of the Debtor's obligations.

**BACKGROUND**

5.    The Debtor is the sole member of Shirokia Development LLC ("Shirokia Development").  Shirokia Development is the owner, sponsor and selling agent for a condominium building located at 142-28 38th Avenue, Flushing, NY 11354, consisting of 23 non-regulated residential units, 4 commercial units and 47 parking spaces.

6.    As set forth in the Affidavit of Yung Hsing Chou dated September 6, 2016 (the "Chou Affidavit") filed in support of the Motion, on December 23, 2015, the Debtor entered into a mezzanine loan transaction with 38th Avenue, which included a Mezzanine Loan Agreement, a Promissory Note in the amount of $2,000,000 (the "$2,000,000 Note"), and a Pledge and Security Agreement (the "Pledge Agreement").  Copies of the agreements are annexed to the Chou Affidavit as Exhibits C, D and E, respectively.

7.    Only the Debtor and 38th Avenue were parties to those agreements.

8.   On the same date, as further set forth in the Chou Affidavit, Shirokia Development and W Financial Fund LP ("W Financial") entered into a mortgage loan transaction in the original principal amount of $18,000,000.

9.   The Debtor was not a party to the mortgage loan transaction.

10.  Also on the same date, as further set forth in the Chou Affidavit, 38th Avenue and W Financial entered into an Intercreditor Agreement. (See Chou Aff. Ex. F.)

11.  The Debtor is not a party to the Intercreditor Agreement.

12.  Several months later, a pay-off letter was requested from W Financial. The Debtor was shocked to receive a letter dated July 18, 2016 (the "Pay-Off Letter"), which appeared to merge the obligations of the Debtor under the Mezzanine Loan and of Shriokia Development under the Mortgage Loan.  A copy of the Pay-Off Letter is annexed as **Exhibit A.**

13.  It was impossible for the Debtor to decipher from the Pay-Off Letter the amount required to satisfy its obligations to 38th Avenue because they were lumped together with Shirokia Development's obligations to W Financial, for a grand total pay-off in the amount of $21,298,348.03.

14.  Only one day later, on July 19, 2016, 38th Avenue sent an alleged Notice to the Debtor purporting to schedule an auction of the Debtor's membership interests in Shirokia Development.  The auction was adjourned for a short time.

15.  In the meantime, it became apparent that 38th Avenue was asserting that the Debtor could not pay the Mezzanine Loan unless Shirokia Development paid the Mortgage Loan.   38th Avenue denied the Debtor its right to satisfy the obligations to 38th Avenue by paying the $2,000,000 Note.

16.  Unable to obtain 38th Avenue's cooperation in accepting payment on the $2,000,000 Note, the Debtor filed this Chapter 11 case to protect its valuable assets while enforcing its right to satisfy its obligations to 38th Avenue by paying the $2,000,000 Note due under the Mezzanine Loan.

## LEGAL ARGUMENT

17.  The Debtor is entitled to enforce its rights under the Mezzanine Loan Documents which permit the Debtor to pay the accelerated amount due on the $2,000,000 Note, and thereafter require 38th Avenue to file a UCC-3 termination statement.

18.  The Intercreditor Agreement to which the Debtor is not a party does not supersede the Debtor's rights under the Mezzanine Loan Documents or require the Debtor to pay the Mortgage Loan obligations of Shirokia Development as a condition to satisfying the Mezzanine Loan.  In fact, the Mezzanine Loan Agreement expressly states that the Intercreditor Agreement does not apply to the Debtor.

19.  The Debtor is prepared to pay the $2,000,000 Note, and hopes to have the amount deposited into an attorney escrow account prior to the hearing on the Motion.

20.  Accordingly, the Debtor's Chapter 11 reorganization was not filed in bad faith and there is no reason to dismiss the case.

21.  Further, the Debtor's ability to successfully reorganize upon payment of the $2,000,000 Note is evident and defeats 38th Avenue's assertion there is "cause" to modify the automatic stay.  The Debtor would be enormously harmed by the lifting of the automatic stay because it would lose its valuable membership interest in Shirokia Development, while 38th Avenue suffers no harm by the continuation of the automatic stay

while it waits a short time to receive payment in full, and indeed may enormously benefit

from the hefty 18.25% interest rate on the $2,000,000 Note.

**The Only Obligation for Which the Debtor**
**Pledged Collateral is the $2,000,000 Note**

22.    The Debtor should be entitled to satisfy its obligations to 38th Avenue by payment

of the $2,000,000 Note.

23.    The only obligation for which the Debtor pledged collateral is the $2,000,000

Note.  Under the plain language of the Mezzanine Loan Documents, the collateral was not

pledged for payment of any other obligation.

24.    The Pledge Agreement provides:

Pledge; Grant of Security Interest.  [Debtor] hereby pledges and grants to [38[th]
Avenue], as collateral security for the **prompt payment and performance when due**
(whether at the stated maturity, by acceleration or otherwise**) of the Debt**, a first
priority security interest in all of Pledgor's right, title and interest in, to and under the
following [collateral]:

[emphasis provided]

See, Chou Aff. Ex. E, ¶2, p. 3.

25.    The "Debt" referred to in the Pledge Agreement is the $2,000,000 Note.  The term

does not include any other obligation.

26.    The Mezzanine Loan Agreement defines "**Debt**" as follows:

"Debt" shall mean the outstanding principal amount set forth in, and evidenced by,
this Agreement and the Note[1] together with all interest accrued and unpaid thereon an
all other sums due to [38[th] Avenue] in respect of the Loan[2] under the Note, this
Agreement, the Pledge Agreement or any other Loan Document[3], including without
limitation, all Reserve Funds.

---

[1]  "Note" is defined as Promissory Note in the amount of $2,000,000.  See Chou Aff. Ex. E, ¶1 and recitals.
[2]  "Loan" is defined as loan from 38th Avenue to Debtor in the principal amount of $2,000,000.  See Chou
Ex. E, ¶1 and recitals.
[3]  "Loan Document" is a defined as the Mezzanine Agreement, the Note, the Pledge Agreement, the
Environmental Indemnity, the Guaranty, the Assignment of Title Insurance Proceeds, the Irrevocable Proxy
Agreement, the Recognition Agreement and all other documents executed and/or delivered in connection
with the Loan.  See Chou Ex. C, Art. I, Sec, 1.1, p. 8.

See, Chou Aff Ex. C, Art. I, Sec, 1.1, p. 4.

27.  In other words, the term "Debt" is limited in scope to the Mezzanine Loan and does not encompass the Mortgage Loan.

28.  Accordingly, 38th Avenue is incorrect that the collateral was pledged as security for the Mortgage Loan between Shirokia Development LLC and W Financial Fund LP.

29.  Rather, the collateral was pledged for payment of the $2,000,000 Note only, which the Debtor is prepared to pay.

**The Debtor is Entitled to Satisfy Its Obligations
To 38th Avenue By Paying the $2,000,000 Note**

30.  The Pledge Agreement entitles the Debtor to pay the $2,000,000 Note, and further provides that such payment fully satisfies the Debtor's obligations to 38th Avenue.

31.  The Pledge Agreement provides in relevant part:

Upon satisfaction in full of the Debt and payment of all amounts owned on the Note, [38[th] Avenue's] rights under this Agreement shall terminate and [38[th] Avenue] shall execute and deliver to [the Debtor] UCC-3 termination statement or similar documents and agreements to terminate all of [38[th] Avenue's] rights under this Agreement and all other Loan Documents.

See, Chou Aff. Ex. E, ¶8(c), p. 9.

32.  The Debtor's right to pay the $2,000,000 Note is clearly established. If the Debtor was required to pay more than the $2,000,000 Note (ie. Shirokia's obligations under the Mortgage Loan), the loan documents would say so.  But they don't.  The clear and plain language provides the Debtor with the right to satisfy the "Debt", which in turn mandates 38th Avenue to accept payment and thereafter terminate its rights under the loan agreements.  No other loan obligations are mentioned.

33.  To use a colloquial phrase, the loan documents mean what they say, and they say what they mean.  Nothing therein requires the Debtor satisfy any obligation other than the one clearly defined in the loan documents – the $2,000,000 Note.

34.  Consistent with the Pledge Agreement, the Mezzanine Loan Agreement limits 38th Avenue's remedies to declaring the $2,000,000 Note to be due.  It does not permit 38th Avenue to declare both the $2,000,000 Note and the Mortgage Loan to be due from the Debtor.

35.  The Mezzanine Loan Agreement provides in relevant part:

> Upon the occurrence of an Event of Default… [38th Avenue] may take such action, without notice or demand, that [38th Avenue] deems advisable… including, without limitation, **declaring the Debt to be immediately due and payable**, and [38th Avenue] may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against [the Debtor] or any part of the Collateral…

[emphasis added]

See, Chou Aff. Ex. C, Art. VII, Sec. 7.1(b), p. 51.

36.  The Loan Documents do not authorize 38th Avenue to demand payment of the Mortgage Loan, but instead only the Mezzanine Loan.

37.  Accordingly, 38th Avenue lacks any authority to demand that the Debtor pay it anything other than the $2,000,000 Note, which the Debtor is prepared to do.

**The Intercreditor Agreement Does Not Alter
the Debtor's Right to Pay the $2,000,000 Note**

38.  It is important to note that the the Debtor is not a party to the Intercreditor Agreement.  See Chou Aff., Ex. F.  As such, the Debtor never agreed to be bound by its terms.

39.   The Debtor is a party to the Loan Documents which by definition do not include the Intercreditor Agreement, and which establish the Debtor's absolute right to satisfy its obligations to 38th Avenue by paying the $2,000,000 Note only.

40.   Although the Intercreditor Agreement is referenced in the Mezzanine Loan Agreement, the reference makes clear that the Intercreditor Agreement does not apply to the Debtor and the Debtor's rights under the Mezzanine Loan Documents are "<u>unmodified</u>" by the Intercreditor Agreement.

41.   The Mezzanine Loan Agreement provides in relevant part:

**Section 8.6  <u>Intercreditor Agreement</u>**

[W Financial] and [38[th] Avenue] are parties to a certain intercreditor agreement dated as of the date hereof (the "Intercreditor Agreement") memorializing their relative rights and obligations with respect to the Loan, the Mortgage Loan, Borrower, the Mortgage Borrower and the Property.  [The Debtor] and [Shirokia Development] are not intended third-party beneficiaries of any of the provisions therein and shall not be entitled to rely on any of the provisions contained therein.  [W Financial] and [38[th] Avenue] shall have **no obligation to disclose to [the Debtor] the contents** of the Intercreditor Agreement.  **[The Debtor's] obligations [under the Mezzanine Loan Agreement]** are independent of such Intercreditor Agreement and **remain unmodified by the terms and provisions [of the Intercreditor Agreement].**

[emphasis provided]

See, Chou Aff. Ex. C, Art. VIII, Sec. 8.6, p. 58.

42.   It clear states that the Debtor's obligations under the Mezzanine Loan Agreement remain unmodified by the Intercreditor Agreement.  Indeed, how could the Debtor's rights be subject to the Intercreditor Agreement when the Mezzanine Loan Agreement clearly states the Debtor is not even entitled to disclosure of the terms of the Intercreditor Agreement?  The answer is that they can't.

43. Thus, 38th Avenue cannot rely upon the Intercreditor Agreement to argue the Debtor owes anything other than the $2,000,000 Note. Nor can 38th Avenue argue that payment of the Mortgage Loan is a pre-condition to paying the $2,000,000 Note.

44. 38th Avenue would have this Court believe that the Intercreditor Agreement forbids 38th Avenue from accepting the Debtor's payment in full of the $2,000,000 Note. See Chou Aff., ¶30. However, 38th Avenue failed to disclose that the provision quoted in the Chou Affidavit continues on, providing a procedure for 38th Avenue to accept the payment, as follows:

> All payments or distributions upon or with respect to the Mezzanine Loan which are receive by [38[th] Avenue] contrary to the provisions of this Agreement shall be immediately paid over to [W Financial] in the same form as so received (with any necessary endorsement) to be applied (in the case of cash) to, or held as collateral (in the case of non-cash property or securities) for, the payment or performance of the Senior Loan in accordance with the terms of the Senior Loan Documents.

See, Chou Aff., Ex.F, Sec. 9, p. 9.

45. The parties clearly envisioned a scenario where the Debtor would satisfy the $2,000,000 Note, and agreed between themselves how to apply the funds. It is of no consequence to the Debtor that 38th Avenue may have to turn those funds over to W Financial and wait to be paid until such time that the Mortgage Loan is satisfied. That is the bargain that 38th Avenue struck. It does not affect the Debtor's right under the Mezzanine Loan Documents to pay the $2,000,000 Note.

46. It is common knowledge that mezzanine loans are more risky than conventional loans. That is why they typically contain high interest rates - in this case eighteen and quarter percent (18.25%), with a default rate of twenty four percent (24%).

47.  38th Avenue entered into the Mezzanine Loan knowing that it may have to allow the "Debt" obligation in the amount of $2,000,000 to be satisfied, and that it would then be required to turn those funds over to W Financial and await a later recovery when the Mortgage Loan is paid.

48.  Here, the Debtor's rights under the Mezzanine Loan Agreement clearly state that the terms of the Mezzanine Loan Documents are <u>not</u> modified by the Intercreditor Agreement.

49.  Accordingly, despite 38th Avenue's potential obligation to resolve with W Financial how the $2,000,000 is applied, the Debtor remains entitled under its own Mezzanine Loan Documents to satisfy its obligations in full to 38th Avenue via payment of the $2,000,000 Note.

**<u>The Debtor Is Able to Satisfy the $2,000,000 Note</u>**

50.  The Debtor anticipates funds will be deposited in an attorney escrow account sufficient to satisfy its obligations under the $2,000,000 Note before the hearing on this Motion, or substantially all of the funds will be deposited by the hearing date with the balance to be deposited shortly thereafter.

51.  The Debtor has filed an application to establish a Bar Date to require 38th Avenue will file a Proof of Claim, which it has not done.  Once the Debtor has a detailed pay-off or Proof of Claim from 38th Avenue, it can then analyze whether or not it agrees with the amount alleged due.

52.  Alternatively, if 38th Avenue refuses to provide a pay-off that addresses legitimate amounts due under the $2,000,000 Note only, then the Debtor intends to file a motion

seeking an order directing 38th Avenue to accept payment as calculated by the Debtor in full satisfaction.  In this manner, the Debtor intends to expedite resolution of the dispute.

**Shirokia Development is Prepared to**
**File a Voluntary Chapter 11 Petition**

53.  Upon information and belief, W Financial filed a motion for summary judgment in the pending foreclosure action against Shirokia Development, which was opposed and a cross-motion to dismiss on various grounds was filed and the motions have been submitted for decision.

54.  There is a possibility that the foreclosure action will be dismissed.  Regardless, Shirokia Development is prepared to file a voluntary Chapter 11 petition, if necessary, to protect the rights of the Debtor.  Of course, it would be preferable to avoid the enormous additional costs to all parties by avoiding an additional Chapter 11 filing.

**The Chapter 11 Case Was Not Filed in Bad Faith**

55.  No grounds exist to dismiss this Chapter 11 case.  It was filed for the legitimate purpose of protecting the Debtor's valuable membership interest in Shirokia Development.

56.  38th Avenue is incorrect that the Debtor is prohibited from satisfying its obligations by paying in full its obligations under the $2,000,000 Note.

57.  In fact, it is 38th Avenue that has shown bad faith, having failed to provide a legitimate pay-off of the Debtor's obligation, and having insinuated in its Motion that it is prohibited from accepting the pay-off.

58.  The Debtor hopes to have sufficient funds to pay the $2,000,000 Note in an attorney escrow account prior to the hearing on the Motion, or a substantial amount with the balance to be remitted shortly.

59.  The Debtor submits that grounds do not exist to dismiss this Chapter 11 case.

## Cause Does Not Exist to Modify the Automatic Stay

60.  Nor is there "cause" to modify the automatic stay.

61.  The Debtor expects to have funds sufficient to pay its obligation to 38th Avenue in full by the hearing date on this Motion or shortly thereafter.  If necessary, the Debtor will file a Plan of Reorganization in short order which establishes a deadline for payment.  If necessary, the Debtor will also file a motion for an order directing 38th Avenue to accept the pay-off in full satisfaction of the Debtor's obligations to it.

62.  The Debtor would suffer enormous harm if the automatic stay were to be lifted. This Chapter 11 proceeding is only in its second month.  The Debtor intends to swiftly satisfy 38th Avenue in full of all amounts legitimately due.

WHEREFORE, the Debtor respectfully requests the 38th Avenue's motion to dismiss this chapter 11 case or in the alternative modify the automatic stay be denied in its entirety.

Dated:  White Plains, New York
         October 19, 2016

                    DELBELLO DONNELLAN WEINGARTEN
                    WISE & WIEDERKEHR, LLP
                    *Attorneys for the Debtor*

                    _____/s/ *Dawn Kirby*_____
                    By: Dawn Kirby
                        One North Lexington Avenue
                        White Plains, New York 10601
                        (914) 681-0200